# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**AARON R. THOMPSON,**

     **Plaintiff,**

-vs-                   **Case No. 6:09-cv-906-Orl-31GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

_____

# ORDER

On March 19, 2005, the Magistrate Judge issued a Report and Recommendation (Doc. 16) in which he recommended that this case be remanded to the Commissioner of Social Security (the "Commissioner") for further proceedings. The Commissioner filed a timely objection (Doc. 18) and the Plaintiff, Aaron Thompson ("Thompson") filed a response (Doc. 19) to the objection. Upon *de novo* review, the Court disagrees with the recommendation of the Magistrate Judge and affirms, in part, the decision of the Commissioner.

**I.  Background**

Except as noted, the following facts are undisputed. Thompson, who was born in 1954, has an extensive employment history, including stints as a building contractor, a seasonal Santa Claus – a job classified as "character impersonator" in the Dictionary of Occupational Titles – and, from 1981 to 2001, as a concrete construction supervisor. Thompson also had worked in several other jobs that would be classified as "heavy" work.

Thompson filed a timely application for disability insurance benefits on January 10, 2006, alleging an onset date of December 30, 2005. He had not engaged in substantial gainful activity from the onset date through the date of his hearing before the ALJ. He contended that he was disabled as a result of arthritis in his left knee, problems with his hand and feet, and side effects from his medications.

At the hearing, the Vocational Expert ("VE") testified that the position of concrete supervisor as generally performed was light duty skilled work, but that as performed by Thompson, the job would be considered heavy duty. The VE also testified that the job of building contractor was classified as light duty skilled work. There was no testimony from the VE or from Thompson as to whether the position of building contractor, as performed by Thompson, would be considered something other than light duty skilled work.

Thompson testified that his work as a character impersonator lasted about six or seven weeks and paid $5,500. After Thompson's testimony, the VE testified that the character impersonator position was light duty, unskilled work. After this testimony, the ALJ asked the VE for "some other examples of light-duty work that requires only occasional walking or standing." The VE replied with three: gate guard, ticket-taker and labeler. The VE testified that ticket-taker would be classified as unskilled work, the other two were semi-skilled work, and all three positions existed in significant numbers in both the national and regional economies.

On November 28, 2005, the ALJ issued a decision finding that Thompson was not disabled. The ALJ found that, as of the last date he was insured, Thompson was 52, had at least a high school education, and as of the last date insured he had the following severe impairments: arthritis of the left knee, bilateral foot pain, obesity, right hand pain, and diabetes mellitus. The

ALJ determined that Thompson had a residual functional capacity to perform light work with only occasional standing and walking. The ALJ found that Thompson was able to perform his past relevant work as a concrete supervisor (as generally performed), building contractor, and character impersonator. In addition, the ALJ concluded that Thompson could perform the jobs of gate guard, ticket-taker, or labeler. This conclusion was based, according to the ALJ, on testimony elicited when he asked the VE whether jobs existed in the national economy for an individual with Thompson's age, education, work experience, and residual functional capacity.

After the Appeals Council denied Thompson's request for review of the ALJ's decision, Thompson filed the instant suit. After briefing, the Magistrate Judge found that the ALJ's determinations that Thompson could perform several of his past jobs, as well as the jobs of gate guard, ticket-taker, or labeler, were not supported by substantial evidence. The Magistrate Judge recommended that the case be remanded for the ALJ to elicit evidence as to whether someone of Thompson's age, education and work history would be able to perform the gate guard, ticket-taker, or labeler jobs.

**II.    Standards**

A claimant's only avenue for judicial review of a denial of claimed Social Security benefits is found in 42 U.S.C. § 405(g) (henceforth, "Section 405(g)"). *Mathews v. Eldridge*, 424 U.S. 319, 327 (1976) (noting, *inter alia*, that 42 U.S.C. § 405(h) precludes federal question jurisdiction over Social Security appeals). Under Section 405(g), a claimant may seek review in federal court of "any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g).

A claimant is entitled to disability benefits when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42

U.S.C. § 423(d)(1)(A) (1982). Initially, the claimant must prove that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir.1986). Once that burden is met, the Commissioner must prove that the claimant is capable, considering his/her age, education, and work experience, of engaging in another kind of substantial gainful employment which exists in the national economy. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

The court reviews the factual determinations of the Commissioner with deference, holding them to be conclusive so long as they are supported by "substantial evidence" – which has been defined as relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Keeton v. Department of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1996); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). On the other hand, the Commissioner's conclusions of law are not presumed valid. *Keeton* at 1066. The Commissioner's conclusions of law are reviewed with close scrutiny, and a failure to apply correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Id.*

## III.  Analysis

Among other arguments, Thompson contends that the ALJ erred in determining that he was able to perform the jobs of gate guard, ticket-taker, or labeler. Thompson points out that all three of these jobs are classified as light work, and that light work by definition requires frequent standing and walking. Because the ALJ found he could only stand and walk occasionally, rather

than frequently, Thompson argues that it was error to find that he could perform these jobs. However, this argument fails because it ignores the testimony of the VE, who said that, although these particular jobs are classified as light work, they require only occasional standing and walking. Thompson does not point to any evidence to the contrary.

The Magistrate Judge found that the ALJ's conclusion that Thompson could work as a gate guard, ticket-taker, or labeler was not supported by substantial evidence. As the Magistrate Judge correctly points out, the ALJ's opinion overstates the evidence on this point. According to the ALJ's opinion, the ALJ "asked the [VE] whether jobs existed in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity," and in response the VE "testified that given all of these factors the individual would have been able to perform the requirements of" those three jobs. However, the hearing transcript shows that neither the question posed to the VE nor his answer explicitly referenced Thompson's age, education, or work experience. The pertinent testimony begins with a discussion of Thompson's pervious work as a Santa Claus, then turns to the issue of other potential work:

ALJ: Mr. Bradley, if you know the answer to this, what kind of a job is Santa Claus according to the DOT, or is there such a thing?

VE: Yes, sir. I can find that for you. It's under character impersonator.

. . .

VE: The DOT number is 299.647-010, character impersonator. Classified in the DOT as light duty, unskilled, SVP[1] 2.

---

[1] "SVP" is an acronym for "specific vocational preparation," an estimate of the time it takes to develop the facility for average performance on the job. A worker can learn enough to achieve average performance of an SVP 2 job in less than a month, while an SVP 3 job is expected to require between one and three months. An SVP 9 job – the highest category – requires more than 10 years.

| | |
|---|---|
| ALJ: | Hmm. |
| VE: | Probably [classified as] light duty because sometimes you have to lift the children and put them in your lap, but you're sitting the majority of the day. |
| Counsel: | Well, I would certainly think so, yeah. |
| VE: | Yeah. |
| ALJ: | Could you give me some other examples of light-duty work that requires only occasional walking or standing? |
| VE: | Gate guard would be one; that's light duty, SVP 3, DOT number 372.667.030. In terms of approximate numbers, there are approximately 200,000 positions in the U.S. economy, and 13,000 positions in the regional economy, or the state of Florida. Another example, light duty, unskilled, SVP 2, would be ticket-taker, DOT number 344.667-010. Nationally, there are approximately 45,000 positions, regionally, 2,500 positions. Another example would be labeler, any industry. That's light duty, SVP 2, DOT number 920.687.126. Nationally there are approximately 50,000 positions; in the region, approximately 1,200 positions. |

The VE did not subsequently testify that he had taken Thompson's age, education or work experience into account in formulating this response. Despite this, the Court finds that the ALJ's conclusion that Thompson could perform these jobs is supported by substantial evidence. The VE was certainly aware of these facts. Before the VE gave this answer, Thompson had testified as to his age and education, and the VE had testified at length regarding Thompson's work history. Thus it is likely that the VE considered these factors in formulating this answer, despite the lack of a command to do so from the ALJ.

In addition, these unskilled or semi-skilled jobs appear to be well within the capacity of a 54-year-old man with a high school education and a history of skilled and semi-skilled work, as is the case with Thompson. There was no evidence at the hearing, and no allegation by Thompson in

his papers in the instant case, that he now lacks the capacity to do unskilled or semi-skilled work, or that an otherwise qualified 54-year-old with a GED and Thompson's work history would be unable to do these jobs. As such, the VE's testimony provides substantial evidence in support of the conclusion that Thompson could perform this other work, and was therefore not disabled.[2]

**IV.     Conclusion**

In consideration of the foregoing, the Court rejects in part the Report and Recommendations (Doc. 19) of the Magistrate Judge, as outlined above. The decision of the ALJ that Thompson is able to perform the jobs of gate guard, ticket-taker, or labeler and is therefore not entitled to disability benefits is **AFFIRMED.**   The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 27, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Magistrate Judge
Counsel of Record
Unrepresented Party

---

[2] Because of this, the Court need not consider whether the ALJ erred in determining that Thompson could perform his past relevant work of concrete supervisor, building contractor, or character impersonator.